Kristin A. VanOrman (7333)
Jeremy G. Knight (10722)
Jessica J. Johnston (14687)
**STRONG AND HANNI**
102 South 200 East, #800
Salt Lake City, Utah 84111
Telephone:  (801) 532-7080
Facsimile:  (801) 596-1508

*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DIVISION, DISTRICT OF UTAH

| | |
|---|---|
| **DENILE GALE**, <br><br> Plaintiff, <br><br> vs. <br><br> **UINTAH COUNTY**, a political subdivision of the State of Utah; **UINTAH COUNTY ATTORNEY LOREN W. ANDERSON**, in his official and individual capacity; and **SHERIFF JEFF MERRELL**, in his official and individual capacity, <br><br> Defendants. | **UINTAH COUNTY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** <br><br><br><br> Civil No. 2:13-cv-725 <br><br> Judge Tena Campbell |

Defendants Uintah County, Uintah County Attorney Loren W. Anderson, and Sheriff Jeff

Merrell (hereinafter "Uintah County"), by and through counsel of record, hereby provide their

Reply Memorandum in Support of their Motion for Summary Judgment.

## INTRODUCTION

Leaving no stone unturned, Plaintiff has attempted – but ultimately failed – to create a question of fact that entitles him to a trial in this matter.

The law governing due process for public employees is relatively straightforward and very well established: Given the existence of a property right, a public employee should get notice and an opportunity to respond to the reasons for termination. Despite Plaintiff's efforts to deflect and pick apart the relevant law, there can be no doubt that he had ample notice of the charges against him and multiple opportunities to defend his actions.

Moreover, Sheriff Merrell was given more than sufficient evidence that Plaintiff had violated a direct order and jail policy and was therefore subject to discipline. Indeed, Plaintiff's defense throughout the due process he was given was not that he should not have been disciplined, but that termination was too harsh. While reasonable minds may differ regarding the severity of the discipline required, that is not the standard for a substantive due process claim. This Court must decide whether the termination was arbitrary and shocking to the contemporary conscience. Given Plaintiff's actions and attitude, his termination was not arbitrary and shocking to the contemporary conscience.

Plaintiff's First Amendment claim is clearly without merit given the dearth of evidence linking the Sheriff's actions to Plaintiff's political activities. Viewing the facts in a light most favorable to Plaintiff, a jury would be *required* to speculate that the Sheriff's actions were in retaliation for Plaintiff's open support of his political rival. Plaintiff's notion of the law is unsustainable. If a sheriff had to question every job action he took against an employee who simply supported his political opponent, department efficiency would come to a grinding halt.

Lastly, a brief word about Plaintiff's allegations of plagiarism: When these allegations were first brought to counsel's attention, counsel did as asked and filed an errata supplementing the intermediate citations despite the fact that the particular cases were not relied upon to support Defendants' argument. Despite Defendants' showing of good faith in this instance, Plaintiff's counsel still chose to make the allegations in the opposition brief. This act was clearly a tactic to distract from the merits (or lack thereof) in this case.

## <u>ADDITIONAL FACTS IN REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION</u>

## I.      PLAINTIFF'S FALSE CLAIMS OF DENIAL OF DUE PROCESS

In several instances, Plaintiff has violated rule DUCivR 56-1(c)(2)(B) by adding blatant argument and additional allegations to an "undisputed" fact. Any new facts should be reserved for the "statement of any additional material facts," and argument should be reserved for the argument section. DUCivR 56-1(c)(2)(C). Accordingly, Defendants were forced to provide additional facts below and to respond to more argument than otherwise. Please also see Defendants' additional facts in reply to Plaintiff's "statement of additional material facts" and Defendants' evidentiary objections, raised pursuant to DUCivR 7-1(b)(1)(B) and Fed. R. Civ. P. 56(c)(2).

1.      Undisputed. The additional facts show that, despite Plaintiff's claim that he was covered by the Sheriff's Merit System Act, there is no evidence in the record that he appealed his discharge to the Merit System Commission as allowed by Utah Code Ann. § 17-30-19.

2.      Undisputed.

3.      Plaintiff has disputed this statement of fact in bad faith. Plaintiff's own initial disclosures clearly show that his job description was as stated in Statement of Fact No. 3 at Gale

000033, yet Plaintiff disputes it because page 000033 is not signed and dated. Plaintiff's

signature and the date are on the next page of his disclosures at Gale 000034, which Plaintiff

strategically omits.

4.      Undisputed. The relevance to this case is self-evident.

5.      Undisputed.

6.      Undisputed. Again, Plaintiff has violated rule DUCivR 56-1(c)(2)(B) by adding

blatant argument and additional allegations to an undisputed fact. These allegations should be

reserved for "statement of any additional material facts." DUCivR 56-1(c)(2)(C). Further, while

Plaintiff claims Policy H 05.03.00(C) is undisputed, he clearly then states that it is disputed due

to his long-time practice of disregarding it in the jail. Accordingly, additional facts are necessary

in response thereto.

The additional undisputed facts also show that Sheriff Merrell gave Plaintiff the chance

to explain his actions in the pre-termination meeting and informed him that Plaintiff's practice

was not condoned by the medical staff in that the physician's assistant, Timothy Langley, clearly

indicated that he "wouldn't ever say, take somebody else's medication Ibuprofen 800: there's

never something so much of an emergency that…that I would tell them to take someone else's

Ibuprofen 800. . . . You can't do it…You can't give somebody else's medication. It's kind of a

no-brainer. You don't give somebody else's medication to somebody else." (*See* Doc. 33-6 at

Uintah County 302-303.)

The undisputed additional facts also show that Plaintiff noticed that there was another

name on the blister pack of Ibuprofen 800 he handed out, that the name was *not* crossed-out, and

that he believed, without checking, that the owner of the Ibuprofen 800 was not present and that

he could hand them out to other inmates without a prescription. (*See* Doc. 33-10 at Uintah County 1403-1405; *see also* Doc. 33-5 at pp. 63:6-17, 71:12-74:7.)

7.     In response to Plaintiff's dispute to SOF No. 7, the additional undisputed facts show that Plaintiff testified at his deposition that he was at the training put on by medical officer Amber Williams and remembers 90% of what was said, but does not remember the July 22, 2010 Medical Directive and the 10% of Ms. Williams' training in which she discussed new and updated medical procedures. (*See* 33-5 at pp. 67:22-69:15; *see also* Doc. 33-18 at pp. 23:10-24:8.) The additional facts show that Plaintiff testified at his post-termination appeal hearing before the Career Service Review Board ("CSRB") that he was at the subject training and aware of the ***new*** policy that jailers needed to call Logan Clark when giving out prescription drugs to inmates that did not have a prescription, but that physician's assistant Logan Clark had told only Plaintiff (before and after the training) that he did not need to call him. (*See* Doc. 33-17 at minutes 3:17:00-3:18:40, 3:23:00-3:23:55, 3:26:02-3:26:59.) Moreover, the additional facts show that Plaintiff's witness at the post-termination CSRB hearing, Lamar Davis, testified that the July 22, 2010 Medical Directive was a direct order and that he expected Plaintiff to know it and follow it. (*See* Doc. 33-15 at P. 1, *see also* Doc. 33-17 at minutes 04:04:21-04:06:02, 04:08:40-04:09:20, 04:13:40-04:14:35.)

With regard to Plaintiff's implication that Stephanie Jones[1] agreed with him that the directive was not implemented, the additional facts show that Stephanie testified that she does not actually know if the policy changed because she was not at the training put on by Amber Williams because she was out on medical leave and therefore could not testify as to Amber's

---

[1] Stephanie is married and now goes by Stephanie Lecureux, which is reflected on her deposition transcript.

directives therein. (*See* Doc. 33-20 (Lecureux Dep.) at P. 9:8-24.) However, the additional facts also show that Stephanie Jones was presented with the July 22, 2010 Medical Directive in her deposition, and she testified that it was put in the "pass-along" for all to see and that she remembers seeing it. (*See id.* at pp. 30:9-31:8.) As an additional fact, Stephanie also testified that *prior* to Amber Williams taking over as medical officer (at the old jail), *Plaintiff* had a "habit" of handing out Ibuprofen 800 without a prescription and that he was the one that trained her and the others to do the same. (*See id.* at 18:11-21.) Additional facts also show that Stephanie testified that Plaintiff should have known that handing out another inmate's prescription strength Ibuprofen 800 without medical authorization was against policy and punishable. (*Id.* at 34:15-18.)

8.      Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     In response to Plaintiff's "dispute" of SOF No. 11, the additional facts show that the Policy stated in the termination notice was a typo, of which Plaintiff and his attorney were aware and which was addressed at the CSRB appeal hearing. (*See* Doc. 33-5 at 83:5-84:17; *see also* 33-17 at minutes 1:27:30-1:31:35.) Also, Plaintiff's own testimony shows that he was fully aware of the Sheriff's problems with his actions and why they violated policy. (*See* Doc. 33-5 at pp. 256-260, 271, 273-74, 276-277.) The additional facts show that the Sheriff's concerns with Plaintiff's policy violations were heavily discussed during the CSRB appeal hearing after his termination. (*See* Doc. 33-17 at minutes 22:30-2:35:20.)

The additional facts show that inmate Casey Bryant said that it was a balding corporal with glasses that did not watch him take his pills (*see* Doc. 33-10 at p. 16), which describes the Plaintiff (certainly not Amber Williams). (*See* Doc. 41-2.) Inmate Scott Peterson also said that it was Gale that did not watch him take his Ibuprofen 800. (Doc. 33-8 at P. 74.) With regard to accusations that jail employees were not watching inmates take pills, no specific officers were ever named by any inmate. Moreover, Bryant also said that inmates will actually put the pills in their mouths and go back to their cells and spit them out so they can trade them for things. (*See id*. at 17.)

Scott Peterson did not say he was given Ibuprofen 800 without a prescription. (Doc. 33-8 at p. 77.) *See* evidentiary objection regarding the alleged statements of Scott Peterson and other inmates.

The additional facts show that the allegation that Plaintiff had distributed another inmate's pills to one inmate to give to another was addressed in the post-termination CSRB hearing in which Plaintiff was represented by counsel. (*See* Doc. 33-17 at minutes 35:56-41:00, 46:00-47:20, 1:02:44-1:04:40.) Plaintiff addressed and defended his actions in handing out another inmate's pills in the CSRB hearing. (*Id*. at minutes 3:00-3:04:35.)

12.     Undisputed.

13.     Undisputed.

14.     In response to Plaintiff's "dispute" of SOF No. 14, the additional facts show that Sheriff Merrell very thoroughly discussed all of the drug-related allegations against Plaintiff during the pre-termination meeting and the post-termination hearing. (*See* Doc. 33-5 at pp. 256-260, 271, 273-74, 276-277; s*ee also* Doc. 33-17 at minutes 22:30-2:35:20.)

15.     *See id.*

16.     Undisputed because the alleged suggestion was not made.

17.     Undisputed.

18.     In response to Plaintiff's "dispute" of SOF No. 18, the additional facts show that Physician's Assistant Logan Clark said that a health care request was required for an inmate that was having pain and needed more than over-the-counter pain medication, which Plaintiff did not do. (*See* Doc. 33-10 at P. 2.) The additional facts show that Logan testified that a jailer could take an Ibuprofen 800 from an overstock (i.e. when an inmate left the facility but did not take his medication) blister pack "downstairs" and give it to an inmate, but "it wouldn't be reasonable" to do it without calling him. (*Id*. at P. 3.) Logan emphasized later in the interview:

> "Isaacson: So if I have someone approach me and say they have a tooth discomfort or a fever or something like that, should I call you or can I just pop out an 800 from someone else and give it to them?
> Clark: They should call me."

(*Id*. at P. 4.)

Logan further testified regarding signing for Ibuprofen 800:

> Isaacson: is there any time you would tell me to give an 800 to somebody and don't worry about the signing for it we're good.
> Clark: No. Never. See they should-- the way it works, and um .. is if I told them to do it, they should write the note down, have the sheet and then if I need to, I can sign the sheet. That I gave that verbal order. Does that make sense?
> Isaacson: Humm.
> Clark: But again, if someone calls me, I'm almost never gonna give a verbal order for 800 ibuprofen.

(*Id.*)

The additional facts show that Clark also testified that it is a very rare emergency in which an inmate will need a phone authorized Ibuprofen 800 right away and could not wait for a health care request to be done. (*Id*. at P. 5.)

The additional facts also show that Clark was responding to how *he* might theoretically penalize a person (which is not his decision) that gave out Ibuprofen 800 without a prescription or phone call when he said he was "not worried" about it and that it was "fine." (*Id*. at pp. 8-9.)

19.     Undisputed.

20.     This dispute is not actually a dispute.

21.     Undisputed.

22.     Undisputed.

23.     Undisputed.

24.     Undisputed.

25.     In response to Plaintiff's "dispute" of SOF No. 25, the additional facts show that Plaintiff testified that "the County did not provide the witnesses," not that the County did not make the witnesses available. (Doc. 33-5 at page 89:24.) The additional facts show that the Plaintiff was allowed to call all four of his County witnesses, who were available at the CSRB hearing. (Doc. 33-17 at minutes 2:52:00-2:55:30; *see also* Doc. 33-15 at P. 1; 33-17 at minutes 03:50:27-4:18.)

## II.     PLAINTIFF'S FALSE CLAIMS OF A FIRST AMENDMENT VIOLATION

1.     Undisputed.

2.     Undisputed.

3.      In response to Plaintiff's "dispute" of SOF 3, the declaration of Lamar Davis was not previously provided to Defendants during fact discovery, and Lamar Davis was not identified by Plaintiff in his Initial Disclosures as one having information that he will use to support his defenses.  Therefore, his declaration should be stricken and not considered by this Court. (*See* Evidentiary Objections.)

4.      Undisputed.

## III.    LOREN ANDERSON'S IMMUNITY FROM SUIT

1.      In response to Plaintiff's "dispute" with Sheriff's Policy 2-600.09, the additional facts show that the said policy was provided to Plaintiff with Defendants' First Initial Disclosures at Bates stamp Uintah County 0404.

2.      Undisputed.

## ADDITIONAL FACTS IN REPLY TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

7.      The additional facts show that Stephanie Jones testified as follows:

> We didn't have a meeting. At one point, she came into the booking area with the blister packs of Ibuprofen and Tylenol and said, "I am going to leave these ***in the booking area***, the medical area, and then into the med room, and if you need these, these can be handed out to the inmates if it's like a must-have."

(*See* Doc. 33-20 at Dep. pp. 28:13-18.) (Emphasis added.)

The additional facts also show that Stephanie was presented with the July 22, 2010 Medical Directive in her deposition, and she testified that it was put in the "pass-along" for all to see and that she remembers seeing it. (*See id.* at Dep. pp. 30:9-31:8.)

x

8.     The citation in support of Plaintiff's additional fact No. 8 refers to a non-existent document and is therefore not supported. Regardless, the additional fact is immaterial for purposes of Defendants' Motion for Summary Judgment.

12.     The additional facts show that Amber Williams told Detective Isaacson that she only left inmate Lindsay's refill packet of 800 milligram Ibuprofen (the one the Plaintiff accessed and handed out to other inmates without a prescription) in the top drawer of the medical car because she knew his in-cell supply would run out in the next day or so. (Doc. 41-6 at pp. 2-3.)

13.     The additional facts show that Amber Williams also told Isaacson that the policy with regard to handing out prescription medication is the "four r's: right patient, right time, right dose, right medication," and the only time they could hand out another inmate's prescription medication is if it was changed to "on-stock" medication and prescribed by a medical provider. (*Id*. at pp. 3-4.)

14.     The additional facts show that Amber Williams testified that she had labeled each tray of the new cart and sent out a communication ("Spillman") regarding the new cart, but had not held a formal training. (*Id*. at P. 3.)

20.     The additional facts show that Sheriff Merrell testified that he read the allegation that officers do not watch inmates take their medications, and that was part of his issue with Plaintiff's conduct.  The video shows that *Plaintiff* did not watch the inmates take the medication he gave them, he did not log it in any fashion and actually asked one inmate to deliver the pills to the inmate that was requesting them. (Doc. 33-18 at pp. 55:5-57:4.) Sheriff Merrell also testified

that, given his extensive experience, Plaintiff should have known better than to do what he did. (*Id*. at 57:5-21.)

The additional facts show that the Sheriff and the County did investigate further allegations that corrections officers were handing out prescription drugs without a prescription. (*See* Uintah County 1679-81, attached hereto as Exhibit 22) Corrections officer Tucker was suspected of handing out a prescription strength drug and was investigated, whereupon it was determined that it was actually an over-the-counter drug, not a prescription drug. (*Id.*) This was discussed during the post-termination appeal hearing before the CSRB. (*See* Doc. 33-17 at minutes 1:18:00-1:19:45.)

The additional facts also show that Defendants produced the termination records requested by Plaintiff, which show that Sheriff's Department employees were disciplined when policy violations were apparent. (*See* Uintah County 1715-1749, attached as Exhibit 23) A sergeant was demoted after leaving a juvenile inmate in a detention cell for a few hours (*id*. at 1716); a corrections control room operator was terminated for consuming alcohol immediately before work (*id*. at 1731); and Amber Williams was placed on disciplinary probation for six months following her off-duty participation in a lingerie show (*id*. at 1746-48).

22.    The additional facts show that Plaintiff did not name a specific individual that had handed out prescription strength medication as he had. (*Id*. at 54:1-5.) The additional facts show that Isaacson spoke to Amber Williams, another jailer, about whether she handed out prescription medications as Plaintiff had. (*See* Doc. 41-6 at pp. 2-4.)

27. The additional facts show that Stephanie Jones testified that she did not know how Plaintiff distributed the prescription drugs for which he was terminated. (Doc. 33-20 at P. 29:22.)

28. *See* Evidentiary Objection and Motion to Strike the Declaration of Lamar Davis. Despite the evidentiary objection, the additional facts show that Davis has now taken a position contrary to his former position, wherein he testified at the CSRB hearing that Plaintiff should have known about the July 22, 2010 Medical Directive, which was a direct order and was formally addressed in Amber Williams' training  (which clearly says "due to continued problems with inmate medication . . . no prescription medication will be given to an inmate without verification of a current and unexpired prescription in that inmate's name"). (*See* Doc. 33-15 at P. 1; *see also* Doc. 33-4 at P. 1; Doc. 33-17 at minutes 04:04:21-04:06:02, 04:08:40-04:09:20, 04:13:40-04:14:35.) This evidence lends to the finding that it is a "sham affidavit." *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 973 (10th Cir. 2001).

30. *See* Evidentiary Objection and Motion to Strike the Declaration of Lamar Davis. Despite the objection, the additional facts show that the Sheriff *did* not (Plaintiff says "would not") pursue discipline because he did not find any evidentiary support for the allegation that the subject employees were having an affair. (Doc. 33-18 at pp. 34-35.) Plaintiff has provided no evidence that Sheriff Merrell or Uintah County knew anything about Davis's remaining allegations.

34. The additional facts show that Plaintiff's February 21, 2011 grievance letter was complaining about John Laursen, not the Sheriff. (Doc. 41-4 at pp. 1-2.) There is no evidence that Chief Deputy Laursen was a decision-maker in the termination of the Plaintiff.

35.     The additional facts show that Sheriff Merrell was responding to several allegations made against other employees by Plaintiff in multiple grievances. (Doc. 41:5 pp. 1-3.) When Sheriff Merrell wrote that *John Laursen's* actions were not connected to the 2010 election, he was specifically responding to Plaintiff's complaint about being taken off the UJIS system as a TAC. Sheriff Merrell explained that Plaintiff's access was suspended while Plaintiff was on administrative leave, which was before the 2010 elections and therefore, clearly "in no way connected to the 2010 elections[.]" (*Id*. at P. 2.) Sheriff Merrell further explained that *he* was the final authority for disciplining employees and that suggesting certain disciplinary actions against his co-workers was not Plaintiff's responsibility. (*Id*. at 2.)

36.     The additional facts show that Defendants have produced all the termination and discipline records requested by Plaintiff and there is no evidence to support the speculative conclusion that Nate Webb was terminated.[2]

38.     The additional facts show that the parties, who were represented by counsel at the CSRB hearing, discussed this issue for the first 22:30 minutes after lunch when the hearing resumed. (*See* Doc. 33-17 (CSRB second recording) at minutes 0:01-22:30.) Plaintiff almost immediately agreed to go forward, but the County was hesitant. (*Id.*) The County eventually agreed to continue with the hearing (without the unrecorded testimony of the first half) with the stipulation that the CSRB would put together findings of fact and conclusions, which both parties had the option to object to, and that the fact that a portion of the CSRB hearing was unrecorded

---

[2] It is immaterial and there was no testimony or document during fact discovery that addressed it; but, for the Court's information, Nate Webb was not terminated.  He voluntarily resigned on June 24, 2011. This is yet another basis to strike the declaration of Lamar Davis – he was not identified and, therefore, Defendants had no indication that he would make such a completely false claim about Webb that Plaintiff would then rely upon. (*See* Defendants' Evidentiary Objections.)

would not be used as a basis for a later claim of deprivation of rights. (*Id*. at minutes 12:40-22:30.) The additional facts show that the CSRB decision referenced all the facts that it relied upon in the entire hearing in its memorandum decision. (*See* 33-15 at pp. 1-2.) There is no evidence that either party objected to the CSRB's findings of fact.

### DEFENDANTS' EVIDENTIARY OBJECTIONS AND MOTIONS TO STRIKE

Defendant submits the following evidentiary objections and motions to strike pursuant to DUCivR 7-1(b)(1)(B)[3] and Fed. R. Civ. P. 56(c)(2).

1.     Declaration of Loren Anderson (Exhibit C to Plaintiff's Opp. Memo.)

### Objection and Motion to Strike for Failure to Identify in Initial Disclosures during Fact Discovery

: In response to Defendants' Motion for Summary Judgment, Plaintiff submitted the "Declaration of Lamar Davis," containing 15 lengthy paragraphs of new allegations in support of his claims. Fact discovery in this matter closed on September 22, 2014. During fact discovery, Plaintiff did not depose Lamar Davis and critically did not identify Davis in his Initial Disclosures as an individual that had information that he would use to support his claims, which is required by Fed. R. Civ. P. 26(a). (*See* Plaintiff's Initial Disclosures, attached as Exhibit 24)

Further, Fed. R. Civ. P. 16 authorizes a court to enter scheduling orders and "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii) ...." Fed. R. Civ. P. 16(f)(1). The sanctions authorized under Rule 37 include "prohibiting the disobedient party from

---

[3] DUCivR 7-1(b)(1)(B) indicates that a movant's evidentiary objections may be included in the reply memorandum, but the rules are silent as to whether the objections are included in the reply memorandum page limit. Given that Defendants' objections are short and the "court prefers objections to be included in the same document as the response or reply" as opposed to a separate filing, Defendants submitted them herein and have not included the objections in the page limit. *see* DUCivR 7-1(b)(1)(B).

supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" and "striking pleadings in whole or in part." Fed. R. Civ. P. 3 7(b )(2)(A)(ii)-(iii).

Lastly, Fed. R. Civ. P. 37(c)(1) instructs that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), <u>the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial</u>, unless the failure was substantially justified or is harmless."

Plaintiff has clearly submitted the declaration of Mr. Davis in support of his claims. Fact discovery in this case was lengthy, allowing Plaintiff ample time to determine whether he wanted to identify Mr. Davis in his Initial Disclosures; he elected not to do so. Plaintiff called Mr. Davis as a witness in his CSRB appeal hearing, so he surely knew about him. Defendants' discovery efforts, case analysis, motions and strategic planning in this case was done in reliance on Fed. R. Civ. P. 26(a), which requires Plaintiff's Initial Disclosures before the close of fact discovery. The refusal to identify Mr. Davis until after the close of fact discovery, and in response to Defendants' motion for summary judgment, leaves Defendants severely prejudiced to respond with deposition testimony, documents or other evidence in response to Mr. Davis' declaration.

Plaintiff's glaring and blatant refusal to follow the Federal Rules of Civil Procedure are clearly done to surprise Defendants with adverse witness testimony, and should not be sanctioned by this Court. The Court should strike the declaration of Mr. Davis and not allow Plaintiff to use the information or witness to supply evidence in response to the motion for summary judgment or at trial.

2.      Additional facts Nos. 18 and 20 and argument in Response to SOF No. 5.

**Hearsay Objection**: Plaintiff submits the statements of a Uintah County jail inmate regarding things that Amber Williams said and did, which are contained in Detective Isaacson's written investigative report, to prove that the Sheriff was aware that Amber Williams had violated policy and was not disciplined. These statements were offered for their truth, making them hearsay. *See* Fed. R. Evid. 801(c)(2). Plaintiff cannot reply upon hearsay to create a question of fact in this case. "'[A] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. Okla. 1995) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Moreover, Plaintiff has failed to identify inmate Peterson (or Isaacson, for that matter) in his Initial Disclosures as an individual that he will call in support of his claims at trial.  Therefore, Plaintiff has no way to even present non-hearsay testimony regarding the subject a trial.

3.      Additional facts are argument in Response to SOF 11.

**Hearsay Objection**: As above, Plaintiff submits the statements of Uintah County jail inmates regarding things that Amber Williams and other jail staff said and did, which are contained in Detective Isaacson's written investigative report, to prove that the County was aware that Amber Williams had violated policy and was not disciplined. These out-of-court statements were offered for their truth, making them hearsay and inadmissible herein. *See infra* at RSOF 1.

<u>**ARGUMENT**</u>

**I.      PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.**

Plaintiff cannot defend the fact that he complains about a lack of due process in this case, but knowingly refused to take advantage of the process made available to him. While it is true that Plaintiff is not compelled to appeal the CSRB decision to the Utah District Court or appeal Sheriff Merrell's decision to the Sheriff's Merit Commission, this additional due process was available to him.  If he truly felt like he was denied due process at some level, he would have taken advantage of it.

**II.     PLAINTIFF WAS AFFORDED DUE PROCESS.**

*A.      Plaintiff Does Not Have a Property Interest in His Position.*

In *Board of Regents v. Roth,* the Supreme Court stated that "public employees have a property interest in continued employment if contractual or statutory provisions guarantee continued employment absent "sufficient cause for discharge." *Lucas v. Murray City Civil Service Com'n*, 949 P.2d 746, 752 (Utah Ct. App 1997) (citing *Board of Regents,* 408 U.S. 564, 576-78 (1972). Plaintiff asserts that U.C.A. § 17-30-18 provides the "statutory guarantee" of employment because, he claims, it states that Plaintiff may "only" be fired for 1) neglect of duty; 2) disobedience of a reasonable order; 3) misconduct; 4) inefficiency or inability to satisfactorily perform duties; or 5) an act inimical to the public service. *Id.* However Plaintiff misstates this statute. U.C.A. § 17-30-18 uses the word "may" – not "only" – and therefore does not guarantee continued employment absent sufficient cause. *See La Bove v. Am. Employers*, 189 So.2d 315, 317 (La. Ct. App. 1966) ("the words 'may be' are used as the equivalent of possibly or by chance") (citing *State v. Howland*, 110 P.2d 801; *McElroy v. Luster*, 254 SW. 2d 893 (Tex. Civ.

App.)).  Plaintiff's position is thus not a property interest; therefore, he is not entitled to the Constitutional guarantees of due process that he alleges in his Complaint.

### B.    Plaintiff Was Afforded Pre and Post Termination Procedural Due Process.

Even if the Court finds that Plaintiff has a property interest in his position, and that Uintah County was required to provide him with procedural due process, summary judgment is still required. Plaintiff would have the Court examine each step of the process he was given in a vacuum, without consideration of the whole of pre-termination and post-termination he was given; this is contrary to the law. The 10th Circuit has long held that pre-termination due process should be evaluated in light of the post-termination process given, and vice versa. *See Langley v. Adams County*, 987 F.2d 1473, 1480 (10th Cir. 1993) (citing to *Derstein v. Kansas*, 915 F.2d 1410, 1413-14 (10th Cir. 1990)).

In an attempt to muddy the waters, Plaintiff "disputes" many facts that are irrelevant or indisputable. For example, Detective Isaacson's findings are disputed simply because they are "irrelevant." (Pl. Memo. at xxviii.) This is an improper dispute of a clear fact. Plaintiff only argues; he does not dispute that Detective Isaacson determined that he had violated policy by his actions. (*See infra* Reply to Statement of Fact ("RSOF") 11.) Plaintiff had ample opportunity to address all of the allegations against him. (*Id.*) Moreover, Plaintiff also does not actually "dispute" that he had a lengthy hearing with Sheriff Merrell, wherein he defended his drug-related actions extensively. (*See* Pl. Memo at xxiv; RSOF 14.) Plaintiff attempts to dispute this fact because the Sheriff also discussed matters related to missing computer files. However, the addition of a discussion regarding computer files in the hearing does not change the fact that Plaintiff's drug-related actions were heavily discussed. Moreover, the computer files discussion

is irrelevant because it was not grounds for his termination. Further, for purposes of procedural due process, the dispute over the contradictory nature of Logan Clark's instructions regarding prescription strength Ibuprofen is irrelevant. Plaintiff should have known jail policy, he was informed of Clark's statements during the investigation and of the Sheriff's position, and Plaintiff gave his side of the story many times. Nevertheless, Logan Clark clearly said that Ibuprofen 800 should not be given to inmates without at least calling him first. The fact that Mr. Clark said he was not "worried" about Plaintiff's actions and would have given him a slap on the wrist rather than terminated him is irrelevant.  The Sheriff enforces policy – not Logan Clark. (*See* RSOF 18.)

Plaintiff also attempts to dissect the pre-termination hearing notice he received, claiming that while he was given notice that he gave out prescription strength Ibuprofen to inmates without a prescription, he did not know that he would discuss the fact that the subject pills belonged to another inmate. Plaintiff's proposed level of procedure is inappropriate as it "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *See Loudermill*, 470 U.S. at 545-46. The law does not require such detail in a pre-termination notice. *See Powell v. Mikulecky*, 891 F.2d 1454 (10th Cir. 1989) (stating that nothing in *Loudermill* requires that there be delay between the notice of a charge and the opportunity to respond, and the supervisor's questions to the plaintiff provided him with sufficient notice of the allegations against him); *see also West v. Grand County*, 967 F.2d 362, 368 (10th Cir. 1992) ("A brief face-to-face meeting with a supervisor provides sufficient notice"); *Hugoe v. Woods Cross City*, 316 P.3d 979 (Utah Ct. App. 2013) (holding that the vagueness of a notice of charges did not inhibit the Plaintiff's ability to respond to the allegations against him).

In support of his position, Plaintiff merely cites to dicta in the Utah case *Becker v. Sunset*, which is wholly distinguishable. In *Becker v. Sunset*, the Utah Supreme Court explained that it did not consider a reason given by the employer in the post-termination hearing that *had never before been raised or discussed with the Plaintiff/employee*. 309 P.3d 223, 15-16 (Utah 2013).

That is certainly not the situation here. Plaintiff was fully investigated by Detective Isaacson regarding his alleged actions – all of which were discussed in detail – and specifically that he had handed out another current inmate's prescription-strength pills. (Doc. 33-10 at 26-27, 31.) The pre-termination hearing notice told Plaintiff he needed to address giving prescription strength pills to "inmates that were not entitled to them." (Doc. 33-11 at 2.) Inmates are certainly not "entitled" to one another's pills, regardless of whether or not they have a prescription. In his pre-termination hearing, they discussed in depth the alleged policy violation that Plaintiff had handed a current inmate's prescription pills (*see infra* RSOF 6, 14; *see also* Doc. 33-6 at 18-23), to one inmate to give to another inmate (*id.* at 21-23), and without properly logging it (*id.*). This was thoroughly defended and considered by the CRSB in the post-termination hearing. (*See* infra RSOF 11.) Plaintiff did not deny the allegations; he merely justified them. (Doc. 33-6 at P. 24.) Plaintiff was given fair notice of the subject of the pre-termination hearing: "inappropriately distributing prescription strength ibuprofen." Given the ample pre-termination process that was given to Plaintiff, the risk of an erroneous deprivation was minimized, and simply giving Plaintiff "'some opportunity' to present his side of the case '[provided] a meaningful hedge against erroneous action.'" *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 n.8, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)).

Further, this is not a novel case in which the Court needs to determine the type and amount of procedure required under the *Matthews* test. (*See* Pl. Memo at 4.) In *Bjorklund v. Miller*, the Tenth Circuit restated the "appropriate quantum of process" required in this case:

> "'For government employees, such a hearing requires: (1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story.'"

*Bjorklund v. Miller*, 467 Fed. Appx. 758, 765 (10th Cir. 2012) (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009)).

Plaintiff relies upon *Bjorklund* for his argument that he was not given due process because the pre-termination decision-maker was biased. (Memo at 4.) However, *Bjorklund* is distinguishable to this case. The personal bias required to disqualify a hearing officer or tribunal is "substantial." *Bjorklund*, 467 Fed. Appx. at 766 (quoting *Riggins*, 572 F.3d at 1112). The court determined as follows:

> "Bjorklund had made such a substantial showing, with evidence, that the alleged unbiased decision-maker had a personal stake in the outcome. Three reasons were given (1) Mr. Bjorklund personally attacked [the alleged biased decision-maker] during the executive session; (2) [the alleged bias decision-maker] had a personal stake and conflict of interest in seeing Mr. Bjorklund blamed for hiding the unpaid account; and (3) [the alleged bias decision-maker] was biased on the factual issue of whether she had authorized Mr. Bjorklund's actions."

*Bjorklund*, 467 Fed. Appx. at 766. This is certainly not the situation in this case, where Plaintiff has merely concluded (without evidence) that the Sheriff was biased because he was retaliating against him for campaigning against the Sheriff in the election a year earlier. Further – and this is critical – the plaintiff in *Bjorklund* was not afforded a post-termination hearing. In this case, Plaintiff was afforded an impartial hearing before the Uintah County CSRB. An unbiased

decision-maker is not a necessary component of due process at a pre-termination hearing as long as the employee received a neutral adjudicator at a post-termination hearing. *See Riggins v. Goodman*, 572 F.3d 1101, 1114-1115 (10th Cir. Colo. 2009) (citing positively *Locurto v. Safir*, 264 F.3d 154, 173-74 (2d Cir. 2001) ("collecting cases and concluding that a neutral adjudicator is not a necessary component of due process at a pretermination hearing, so long as the plaintiff is afforded a hearing before a neutral adjudicator after termination")).

 "The United States Supreme Court has made clear that '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *McBride v. Utah State Bar*, 242 P.3d 769, 776 (Utah 2010) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotations omitted). Due to the concerns Plaintiff himself presented with Uintah County's post-termination procedures, the post-termination procedures provided to Plaintiff were tailored differently than would normally be provided to a Uintah County employee.

The 10th Circuit has ruled that the "…the question raised in a procedural due process challenge is whether the level of process afforded to the [Plaintiff] passed constitutional muster, not whether DFS followed statutes or regulations." *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. Wyo. 2007). "[A] failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." *Id.* (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (internal quotation omitted)); citing to *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) ("[O]nce the property right is established, it is purely a matter of federal constitutional law whether the procedure afforded was adequate"). Further, the extensive pre-termination process he was afforded allowed for less elaborate process

in Plaintiff's post-termination procedures. *See Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996)

Regardless, there can be no dispute that Plaintiff was given ample notice of charges against him, an explanation of the evidence against him, and an opportunity to tell his side of the story (in an over eight-hour hearing) in front of a panel of unbiased decision-makers, thereby satisfying procedural due process. (*See infra* RSOF 7, 11, 14, 25; Reply to Statements of Additional Fact ("RSAF") at 20, 28, 38); *Cf. Langley v. Adams County, Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993). As such, Plaintiff was given adequate procedural due process and his claims should thus be denied.

## III.   PLAINTIFF'S TERMINATION WAS NOT ARBITRARY, CAPRICIOUS, OR WITHOUT RATIONAL BASIS.

Plaintiff's substantive due process claim fails because Uintah County's termination was not arbitrary or without rational basis. In *Ward v. Anderson*, the Tenth Circuit emphasized that the standard courts must look to when evaluating a substantive due process claim is the "shocks the conscience" standard, and it is not easy to satisfy. *Ward v. Anderson*, 494 F.3d 929, 937-938 (10th Cir. Wyo. 2007). The *Ward* court instructed as follows:

> This [shocks the conscience] standard is not an easy one for a plaintiff to satisfy: It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

*Ward*, 494 F.3d at 937-938 (citing *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222-23 (10th Cir. 2006) (quotations, citations, alterations omitted).

Federal judges will often determine on summary judgment whether a defendant's actions were shocking to the conscience.  *See Camuglia*, 448 F.3d at 1222-23. Plaintiff's response to the County's stated reasons for terminating him focuses on the fact that he believes termination was too harsh and that he was treated differently from other employees, and a jury could too.

Although a jury could believe that the Plaintiff thought he could hand out Ibuprofen 800 without a prescription, that question will not be posed to the jury at trial.  *See id.* 448 F.3d at 1223.  Indeed, the law does not allow the tribunal to second-guess the County's actions.  It is "not [the] Court's role to act as a super personnel department" and "second-guess" the judgment and actions of Sheriff Merrell. *See Simms v. Okla. Ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1330 (10th Cir. 1999) (citing *Verniero v. Air Force Academy Sch. Dist. No. 20*, 705 F.2d 388, 390 (10th Cir. 1983)). The jury will only be asked to decide if Plaintiff's termination was arbitrary or rose to the level of shocking the conscience; no reasonable jury could so find.

Plaintiff claims, without support, that Logan Clark said he could diagnose and prescribe Ibuprofen 800, despite the fact that Jail Policy forbade it. (*See* RSOF at 7.) However, Clark told detective Isaacson that he needs at least a call before Ibuprofen 800 can be given without a prescription. (*See* RSOF at 18.) Plaintiff has presented no evidence showing that it was unreasonable, let alone arbitrary, for the Sheriff to disbelieve Plaintiff's justification for his actions given Clark's statements. Further, Plaintiff has not provided adequate justification for deferring to Clark over a new policy and a direct order from the Jail Commander. (*See* RSAF 28.)

Even if Plaintiff's story could be believed, Plaintiff's termination is not arbitrary or capricious. By Plaintiff's own admittance, he attended the training where it was emphasized that

any inmates had to have prescriptions to get prescription drugs. (*See* RSOF 7.) Plaintiff's own witness at the post-termination CRSB hearing, Lamar Davis, testified that Plaintiff should have known about that directive. (*Id*; *see also* RSAF 28.) Therefore he should have known that his former actions would no longer be acceptable. Further, the only employee Plaintiff named that supposedly was also handing out Ibuprofen 800 without a prescription, Stephanie Jones, was doing so because Plaintiff trained her to do so. (*See* RSOF 7, RSAF 28.) Regardless, there is no evidence that Jones handed out Ibuprofen 800 without a prescription after the July 22, 2010 Medical Directive or that the Sheriff had any knowledge of Jones' alleged actions. Plaintiff therefore cannot show that after notice of the policy was given, he was treated differently from other employees or was punished arbitrarily.

Plaintiff has also presented no evidence to support his allegation that he was treated differently from fellow jail employees who committed the same or "more severe" actions. Plaintiff accuses several other jail employees of engaging in conduct both similar to his actions and conduct "more severe" than his actions, and claims that those actions were not disciplined by Uintah County. (Memo at 12). Plaintiff relies on nothing more than conjecture and hearsay in making these claims. Further, Plaintiff has presented no evidence that Sheriff Merrell had knowledge of the alleged other employees' policy violations.

During discovery Uintah County produced files relevant to the employees mentioned by Plaintiff. (*See* RSOF at 21.) These responses have no evidence to support Plaintiff's assertions. The records of the one employee that had been found to violate jail policies, Amber Williams, showed that she had been disciplined and that her violation of policy occurred outside of her employment with the jail and did not involve the health of any inmates or any other jail

employees. (*Id.*) Plaintiff has provided no evidence that another corrections officer engaged in the same conduct as he did and was not terminated. (*See* RSOF at 21.) The most Plaintiff has done is point out that Stephanie Jones was trained by him to give out prescription strength Ibuprofen without a prescription; but Plaintiff also handed out another inmate's pills, gave them to one inmate to give to the recipient inmate, did not log the medication dispersal, and refused to take responsibility for his actions when confronted.

In this case, there was strong evidence of Plaintiff's violations; the pills went missing on his shift, and there was video of him distributing them. When confronted with this evidence, Plaintiff admitted to the conduct. Because reasonable minds could come to the conclusion reached by Uintah County that Plaintiff violated several of Uintah County's policies based upon the clear evidence in the record, the decision was not arbitrary, capricious, or irrational and does not shock the conscience. Summary judgment regarding Plaintiff's substantive due process claim should thus be granted.

## IV.   THERE IS INSUFFICIENT EVIDENCE TO SUPPORT PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS.

Plaintiff is correct that the third and fourth prongs of the Pickering analysis are ordinarily questions of fact for the jury. *Gardetto v. Mason,* 100 F.3d 803, 811 (10th Cir. 1996). However, if the material facts are undisputed, then summary judgment is also appropriate on these prongs of the analysis. *See, e.g., Burns v. Board of County Commissioners of Jackson County, Kan.,* 330 F.3d 1275, 1287-88 (10th Cir. 2003) (affirming district court's grant of summary judgment on third *Pickering* factor); *Couch v. Board of Trustees of Memorial Hosp.,* 587 F.3d 1223, 1244-45 (10th Cir. 2009) (affirming district court's grant of summary judgment on fourth *Pickering* prong). Uintah County assumes for purposes of this motion that Plaintiff's action of participating

in the opposing Sheriff's campaign involves matters of concern protected by the First Amendment. Furthermore, the Sheriff and Uintah County had no interest in regulating Plaintiff's political speech, which did not affect their ability to carry on an efficient and effective workplace in this instance.

However, Plaintiff cannot provide any evidence that his protected First Amendment activities were a substantial or motivating factor in the termination of his employment. Sheriff Merrell terminated Plaintiff's employment because of the extent and aggregate amounts of Plaintiff's violations of internal operational policies, his refusal to take responsibility for his actions, and his refusal to demonstrate any enhancement of his understanding of what was expected of him in his role as corporal. (*See* Doc. 33-17 at minutes 35:56-2:35:20.) Sheriff Merrell made this determination after a pre-termination hearing, his review of all of the investigatory information related to the incidents on October 2, 2011, and the recommendations of other members of the Department. Based on the totality of information available to Sheriff Merrell, it was reasonable for him to exercise his judgment as the Sheriff and terminate Plaintiff's employment.

To overcome the legitimacy of his termination, Plaintiff fails to demonstrate that a reasonable jury could conclude that his First Amendment protected activities were a substantial and motivating factor in Sheriff Merrell's decision. *See Deschenie v. Board of Education of Central Consolidated School Dist. No.* 22, 473 F.3d 1271, 1278 (10th Cir. 2007). Plaintiff simply cannot meet his burden of establishing any actual causal connection between his activities in Rick Reynolds' campaign and his termination.

In *Deschenie*, a former school district employee brought a §1983 action against her school district's board of education, alleging retaliation for engaging in speech protected by the First Amendment. *Id.* at 1275. The 10th Circuit ruled that her termination was too "temporally remote" to permit an inference of retaliatory motive without additional evidence. *Id.* at 1278. The Court ruled that "an inference of retaliatory motive is undermined by "a long delay between the employee's speech and [the] challenged conduct" or by "evidence of intervening events." *Id.* (quoting *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). The four instances of speech asserted by the employee preceded the termination by fifteen months, fifteen months, thirteen months, and eleven months. *Id*. at1278. Like *Deschenie*, in this case the timing of the events related to the election do not support any inference of a retaliatory motive by Sheriff Merrell. Plaintiff was terminated in December, 2011. The sheriff campaign at issue took place in 2010, over a year earlier. Such timing is insufficient under applicable Tenth Circuit law to support any inference of a retaliatory motive by Sheriff Merrell. Further, the undisputed facts are Sheriff Merrell won his campaign for reelection. It defies logic to suggest that Sheriff Merrell decided to retaliate against Plaintiff by terminating his employment a year *after* he had already won the campaign. *See. e.g., Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir. 1997) (four months too long); *see also Deschenie*, 473 F.3d at 1278.

Further, the *Deschenie* court granted summary judgment because the Board had presented evidence that the employee's job performance had suffered in the months between her exercise of free speech and her termination. The Court found that the employee presented insufficient evidence to refute this conclusion and "[i]n opposing a motion for summary judgment, [s]peculation or hunches amidst rumor and innuendo will not suffice." *Id*. Similarly, the

intervening events in October 2011, involving actions totally unrelated to Plaintiff's alleged campaign activities, destroy any reasonable inference of any causal connection between Plaintiff's protected activities and his termination.

Like *Deschenie*, Plaintiff is also unable to satisfy the third Pickering prong because he cannot demonstrate any actual evidence of a causal connection between his work on the Reynolds' campaign and his termination. Plaintiff must come forward with actual evidence to create a genuine issue of material fact on this issue and cannot simply rely on speculation or conclusory allegations. *Deschenie*, 473 F.3d at 1278. Plaintiff cannot meet his burden here. Like *Deschesne*, there is no direct evidence in the record that Plaintiff was terminated for openly supporting Sheriff Merrell's opponent.

Further, Plaintiff's circumstantial "evidence" of a correlation is barely present. Plaintiff only points out that he was open about his support for Sheriff Merrell's opponent over a year earlier, that he complained earlier about retaliation by John Laursen (which he guessed was politically motivated), and that the Sheriff did not terminate other employees who engaged in the same conduct as Plaintiff. The mere fact that Plaintiff openly supported Sheriff Merrell's opponent a year before his termination is too circumstantial and remote in time to even be relevant. Moreover, the fact that Plaintiff had complained one time about politically motivated retaliation before does not make it so. The Sheriff carefully explained why he did not believe *Laursen's* retaliation was politically motivated. Regardless, Plaintiff's claims of political retaliation in this case are against the Sheriff, not John Laursen.

Plaintiff cites *Jantzen v. Hawkins* as an example of the 10th Circuit finding genuine issues of material fact to exist when several Sheriff's Office deputies campaigned for a different

candidate for Sheriff and were subsequently fired. However Plaintiff omitted one critical fact in *Jantzen* that differentiates it from the case at issue. In *Jantzen*, prior to the Sheriff's election, the Sheriff held a meeting in which he told his subordinates that "anyone who ran for office against him, openly opposed his reelection, or was in any way disloyal to him would be fired." *See Jantzen v. Hawkins*, 188 F. 3d 1247,1250-1251 (10th Cir. 1999). The Court found that the Sheriff's repeated demands of "unswerving allegiance" from his subordinates, created a genuine dispute as to whether political affiliation and/or beliefs were a substantial or motivating factor in the deputies' terminations.

Unlike in *Jantzen*, Plaintiff has presented no evidence that either Plaintiff's political speech during the campaign, or his involvement in the campaign, was even a factor, let alone a "substantial or motivating" factor for his dismissal. Unlike in the present case, in *Jantzen*, no reason was given for the deputies' terminations beyond their "candidacy qua candidacy". *Id.* at 1252. Further,  the Court held that there was "ample proof that they actually did effectively perform their jobs despite political differences with the Sheriff." *Id*. at 1253. In this case Plaintiff admitted to the conduct and was given concrete reasons for his dismissal.

Finally, Defendants are also entitled to summary judgment on the fourth *Pickering* factor. There is no doubt that Sheriff Merrell would have taken the same action with respect to the Plaintiff's employment in the absence of his campaign activities. Plaintiff was terminated because of his drug-related actions at the jail and Sheriff Merrell's conclusion that Plaintiff's actions and attitude about his actions were inconsistent with his continued employment. The evidence in this case amply demonstrates Sheriff Merrell had a legitimate reason for his decision to terminate Plaintiff's employment. First, the facts show that this issue was so important to the

Department that not only was training held to reinforce the jail's prescription policies, but a training memorandum and Medical Directive were also distributed to the staff. (*See* RSOF 7, RSAF 28.) Second, Plaintiff has presented no evidence that other members of the department were terminated for their campaign participation. Third, Plaintiff's action of handing out *another inmate's* prescription drugs has been universally condemned by all witnesses. Fourth, there is no evidence beyond conclusory inferences based on Plaintiff's remote and circumstantial statements that the Sheriff's actions were motivated by politics.

Sheriff Merrell has therefore carried his burden that he would have terminated Plaintiff's employment regardless of Plaintiff's campaign activities, and Plaintiff's First Amendment retaliation claims fail as a matter of law and should be dismissed.

## IV.   MR. ANDERSON IS AN IMPROPER PARTY TO THIS SUIT.

Plaintiff does not dispute the fact that Mr. Anderson is an improper party to this lawsuit. Consequently, Mr. Anderson should be dismissed from this action as a matter of law.

## CONCLUSION

Based upon the foregoing points and authorities, Plaintiff's claims should be dismissed in their entirety as a matter of law.

DATED this 16th day of January, 2015.

STRONG & HANNI

 /s/ Kristin A. VanOrman
Kristin A. VanOrman
*Attorneys for Defendants*

15

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of January, 2015, I did cause a true and correct copy of the foregoing **UINTAH COUNTY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served via CM/ECF Electronic System, upon the following:

    April L. Hollingsworth
    **HOLLINGSWORTH LAW OFFICE, LLC**
    1115 South 900 East
    Salt Lake City, UT  84105

          /s/ Michelle Cerutti